**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CHERETA ADAMS, as Independent Administrator of the Estate of CHEQUITA ADAMS, deceased, | |
| Plaintiff's decedent, | |
| v. | |
| CITY OF CHICAGO, Illinois, a municipal corporation, UNKNOWN CHICAGO POLICE OFFICER, individually, and as agent of the City of Chicago and the Estate of Chicago Police Officer TAYLOR CLARK, deceased, individually and as agent of the City of Chicago, | No. |
| Defendants. | |
| | JURY TRIAL DEMANDED |

## COMPLAINT

By their attorneys of record, the plaintiff, CHERETA ADAMS, as Independent Administrator of the Estate of CHEQUITA ADAMS, deceased, complaining of the defendants, CITY OF CHICAGO, Illinois, a municipal corporation, UNKNOWN CHICAGO POLICE OFFICER, individually, and as agent of the City of Chicago and the Estate of Chicago Police Officer TAYLOR CLARK, deceased, individually and as agent of the City of Chicago, as follows:

**INTRODUCTION**

1.     This is a civil rights action brought on behalf of plaintiff's decedent, Chequita Adams, who on June 27, 2017 was a victim of excessive force at the hands of defendants UNKNOWN CHICAGO POLICE OFFICER and Officer TAYLOR CLARK and the Chicago Police Department. On June 27, 2017 defendant UNKNOWN CHICAGO POLICE OFFICER engaged in a high speed pursuit of another police officer causing the eluding officer to ram into the car driven by plaintiff's decedent, Chequita Adams causing her death. In addition to the federal claims pursuant to 42 USC Section 1983, Plaintiff files state pendent claims under the Illinois Wrongful Death Act, Illinois Survival Act and common law battery. Plaintiff has filed a *Monell* claim against the City of Chicago claiming among other things that the Chicago Police Department does not adequately train its officers to determine how and when they may use force and/or engage in or disengage from pursuits, appropriately supervise officers to identify dangerous tactics or behaviors that may indicate an officer needs additional training or other intervention, review its force and/or pursuit practices as a whole to identify problematic trends or patterns that endanger officers and others, review its officers' force and/or pursuit incidents to determine whether the force used and/or pursuit complied with the law or departmental policy, or punish officers who use unconstitutional and excessive force or wrongful pursuit tactics against citizens causing great harm or death. Accordingly, Plaintiff's decedent seeks.

**JURISDICTION**

2.     This action is brought pursuant to the Civil Rights Act, 42 U.S.C. § 1983, Monell v. N.Y. Dep't of Soc. Servs., 436 U.S. 658 (1978), and the Fourth and Fourteenth Amendments to the United States Constitution.

3.      The jurisdiction of this Court is invoked pursuant to the judicial code 28 U.S.C. §

1331 and 1343 (a); the Constitution of the United States; and pendent jurisdiction as provided

under U.S.C. § 1367(a).

**PARTIES**

4.      Plaintiff CHERETA ADAMS is a citizen of the United States of America, who

resides in Cook County, Illinois.

5.      Defendants UNKNOWN CHICAGO POLICE OFFICER and TAYLOR CLARK

("Defendant Officers") were, at the time of this occurrence, duly licensed City of Chicago. They

engaged in the conduct complained of in the course and scope of their employment and under

color of law. They are sued in their individual capacities.

6.      Defendant CITY OF CHICAGO ("City") is a municipal corporation duly

incorporated under the laws of the State of Illinois, and is the employer and principal of the

police officer defendants.


**GENERAL ALLEGATIONS**

7.      On information and belief, on June 27, 2017, shortly after completing his shift at

the 10th District of the Chicago Police Department, Clark drove his vehicle heading home.

8.      On information and belief, on June 27, 2017 at or around 1:00 a.m., as Clark

drove his vehicle away from the 10th District, an unmarked police SUV driven by defendant

UNKNOWN CHICAGO POLICE OFFICER attempted to curb Clark's vehicle.

9.      On information and belief, on June 27, 2017 at or around 1:00 a.m. police officers

in the unmarked police SUV driven by defendant UNKNOWN CHICAGO POLICE OFFICER

had no probable cause to believe the occupant of Clark's vehicle had committed a crime.

3

10. On information and belief, on June 27, 2017 at or around 1:00 a.m. police officers in the unmarked police SUV driven by defendant UNKNOWN CHICAGO POLICE OFFICER had not theretofore observed Clark or Clark's vehicle break any laws, traffic or otherwise.

11. On information and belief, on June 27, 2017, at or around 1:00 a.m., Clark sped away from the unmarked police SUV and drove his car west on Roosevelt Road toward Kostner Avenue in Chicago, at speeds well in excess of the speed limit.

12. On information and belief, at all times relevant herein Clark and defendant UNKNOWN CHICAGO POLICE OFFICER and Clark knew that the areas surrounding Roosevelt Road near Kostner were residential areas.

13. On information and belief, on June 27, 2017 at or around 1:00 a.m. the unmarked police SUV driven by defendant UNKNOWN CHICAGO POLICE OFFICER engaged in a high speed chase of Clark's vehicle.

14. On information and belief, on June 27, 2017 at or around 1:00 a.m. both the unmarked police SUV driven by defendant UNKNOWN CHICAGO POLICE OFFICER and Clark drove recklessly westbound on Roosevelt Road in conscious disregard for the safety of others in vehicles or on foot.

15. On information and belief, on June 27, 2017 at or around 1:00 a.m. plaintiff's decedent Chequita Adams was driving her silver Nissan southbound on Kostner Avenue heading toward her home.

16. On information and belief, on June 27, 2017 at or around 1:00 a.m. as plaintiff's decedent Chequita Adams was lawfully making a left turn from Kostner Avenue onto eastbound Roosevelt Road, Clark's vehicle rammed at a high speed into the driver's side of her silver Nissan causing it to overturn and crash into standing utility/sign poles.

17.     On information and belief, on June 27, 2017, at or around 1:00 a.m., prior to the aforesaid crash, defendant, UNKNOWN CHICAGO POLICE OFFICER never disengaged from his high speed chase of Clark.

18.     On information and belief, on June 27, 2017, as a result of the conduct of defendants UNKNOWN CHICAGO POLICE OFFICER and Clark in engaging in reckless driving and pursuit on Roosevelt Road in Chicago, Illinois, plaintiff's decedent suffered serious injuries and eventually succumbed to death.

19.     At all times relevant hereto the City had ordinances and general orders that govern the operation of its vehicles by its employees.

20.     At all times relevant hereto all Defendants herein had a duty to refrain from conduct that consciously disregarded the safety of the general public, and especially Plaintiff's decedent herein.

21.     At all times relevant hereto Plaintiff's decedent did not act or fail to act in any fashion to cause Defendants to act or fail to act in a fashion that consciously disregarded of the safety of Plaintiff's decedent.

### COUNT I—EXCESSIVE FORCE (Section 1983)
### AGAINST DEFENDANT, UNKNOWN
### CHICAGO POLICE OFFICER AND TAYLOR CLARK

Plaintiff complains of Defendant, UNKNOWN CHICAGO POLICE OFFICER and Clark as follows:


1-21.   Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein as paragraphs 1-21 of this Complaint.


22.     The actions of Defendant, UNKNOWN CHICAGO POLICE OFFICER and Clark

as set forth herein constitute excessive force against Plaintiff's decedent thus violating her rights under the United States Constitution and 42 U.S.C. Section 1983.

23.     As a direct and proximate result of Defendant, UNKNOWN CHICAGO POLICE OFFICER's and Trooper Walker's conduct, Plaintiff's decedent suffered damages, including without limitation violations of their constitutional rights and injuries both physical and emotional in nature.

WHEREFORE Plaintiff prays for judgement against Defendant, UNKNOWN CHICAGO POLICE OFFICER and Clark, and each of them, in awarding compensatory damages, punitive damages,  attorneys' fees and costs, and any other relief this Court deems just and appropriate..

**COUNT II**
**WILLFUL AND WANTON CONDUCT**
**WRONGFUL DEATH AGAINST CITY OF CHICAGO**

Plaintiff complains of the City as follows:

1-21.   Plaintiff restates and re-alleges paragraphs 1-21 of the General Allegations as and for paragraphs 1-21 of this Count I.

22.     At all times relevant hereto the City, acting by and through its duly authorized officers, agents, representatives and employees and especially defendant, UNKNOWN CHICAGO POLICE OFFICER and Clark herein, had a duty to refrain from willful and wanton conduct.

23.     Notwithstanding the City's aforementioned duty, the City by and through its officers, agents, representatives and employees, was guilty of one or more of the following willful and wanton acts or omissions:

6

(a)     UNKNOWN CHICAGO POLICE OFFICER began driving its vehicle at a high speed in a residential neighborhood in pursuit of Clark's vehicle and in the face of imminent danger and in gross disregard and indifference for the safety of others including plaintiff's decedent causing it to strike the vehicle of plaintiff's decedent;

(b)     UNKNOWN CHICAGO POLICE OFFICER  and Clark continued to drive their vehicles at high speed in a residential neighborhood in a two vehicle pursuit in the face of imminent danger and in gross disregard and indifference for the safety of others including plaintiff's decedent;

(c)     Clark drove his vehicle at such a high speed in a residential neighborhood that it could not stop before colliding into the vehicle of plaintiff's decedent with great force and violence;

(d)     Clark failed to stop its vehicle before colliding into the vehicle in which plaintiff's decedent was driving;

(a)     Clark drove his vehicle into and against the vehicle in which plaintiff's decedent was driving with great force and violence in gross disregard and indifference for the safety of others including plaintiff's decedent;

(e)     Failed to properly monitor the ongoing conduct of its police officers prior to June 27, 2017;

(f)     Failed to properly discipline the willful and wanton conduct of its police officers prior to June 27, 2017;

(g)     Failed to instruct/order Defendant, UNKNOWN CHICAGO POLICE OFFICER to not initiate the subject high speed pursuit complained of herein, in gross disregard and indifference for the safety of others including plaintiff's decedent;

(h)     Failed to instruct/order Defendant, UNKNOWN CHICAGO POLICE OFFICER to discontinue the subject high speed pursuit complained of herein, in gross disregard and indifference for the safety of others including plaintiff's decedent;

(i)     Failed to instruct/order Defendant, UNKNOWN CHICAGO POLICE OFFICER to use alternative methods to try to apprehend Clark's vehicle, instead of pursuing it at high speed and ramming into it, in gross disregard and indifference for the safety of others including plaintiff's decedent; and

(j)     Was otherwise guilty of willful and wanton acts and omissions in gross disregard and indifference for the safety of others including plaintiff's decedent.

24.    As a direct and proximate result of one or more of the City's willful and wanton acts or omissions in gross disregard and indifference for the safety of others including plaintiff's decedent, the City's vehicle(s) crashed into and against the vehicle of plaintiff's decedent, with great force and violence, causing it to roll over, hit a pole or poles, and causing plaintiff's decedent to suffer physical injuries and death on June 27, 2017.

25.    As a direct result of the death of plaintiff's decedent Chequita Adams, her next of kin have suffered great losses of a personal and pecuniary nature including grief and sorrow and loss of companionship and society, subjecting defendant City of Chicago to liability pursuant to 740 ILCS 180/1, commonly referred to as the Wrongful Death Act

WHEREFORE plaintiff requests judgement in their favor and against the City awarding compensatory damages, attorneys' fees and costs, and any other relief this Court deems just and appropriate..

## COUNT III – SURVIVAL ACT—WILLFUL AND WANTON NEGLIGENCE
### (v. CITY OF CHICAGO)

1–24.    Plaintiff re-alleges paragraphs 1-24 of Count II of this Complaint as if fully set forth herein.

25        As a further direct and proximate result of defendant City of Chicago's aforementioned willful and wanton acts or omissions, decedent Chequita Adams suffered serious injuries of a personal and pecuniary nature, including but not limited to great pain and suffering prior to his death, subjecting defendant City of Chicago to liability pursuant to the Illinois Survival Act, 755 ILCS 5/27–6.

WHEREFORE, plaintiff asks for judgment against Defendant City of Chicago awarding compensatory damages, punitive damages, attorneys' fees and costs, and any other relief this Court deems just and appropriate.

## COUNT IV
## WILLFUL AND WANTON CONDUCT –WRONGFUL DEATH
## AGAINST DEFENDANT UNKNOWN CHICAGO POLICE OFFICER

Plaintiff complains of Defendant, UNKNOWN CHICAGO POLICE OFFICER as follows:

1-21.    Plaintiff restates and re-alleges paragraphs 1-20 of the General Allegations as and for paragraphs 1-21 of this Complaint.

22.        At all times relevant hereto Defendant, UNKNOWN CHICAGO POLICE OFFICER had a duty to refrain from willful and wanton conduct in the exercise and discharge of his duties as a Chicago Police Officer, and also in his individual capacity.

23.        Notwithstanding his aforementioned duty, Defendant, UNKNOWN CHICAGO POLICE OFFICER was guilty of one or more of the following willful and wanton acts or omissions:

9

(a) Drove a City vehicle on a residential street in the City of Chicago at a high rate of speed well in excess of the prescribed speed limit;

(b) Drove a City vehicle on a residential street in the City of Chicago at a high rate of speed into an intersection without reducing speed before entering the intersection;

(c) Drove a City vehicle on a residential street in the City of Chicago at a high rate of speed and without activating its emergency lights or sirens;

(d) Drove a City vehicle causing another vehicle to crash against and into the vehicle of plaintiff's decedent with deadly force and violence;

(e) Failed to keep a proper lookout for the safety of plaintiff's decedent;

(f) Failed to sound proper warning for the safety of plaintiff's decedent and others on the roadway;

(g) Failed to reduce the speed of his vehicle in a dangerous high speed chase;

(h) Failed to obey the restrictions and rules of the City before driving his vehicle at high speed in a residential neighborhood in the City of Chicago;

(i) Failed to obey the instructions and rules of the City by continuing to drive his vehicle at high speed in a residential neighborhood in the City of Chicago; and

(j) Was otherwise guilty of willful and wanton acts and omissions in gross disregard and indifference for the safety of others including plaintiff's decedent.

24.     As a direct and proximate result of one or more of Defendant, UNKNOWN CHICAGO POLICE OFFICER's willful and wanton acts or omissions, in gross disregard and indifference for the safety of others, including Plaintiff's decedent, Defendant, UNKNOWN CHICAGO POLICE OFFICER caused Clark to crash his vehicle with deadly force and violence

into the vehicle of plaintiff's decedent, causing plaintiff's decedent to suffer physical injuries and death on June 27, 2017.

25.     As a direct result of the death of plaintiff's decedent Chequita Adams, her next of kin have suffered great losses of a personal and pecuniary nature including grief and sorrow and loss of companionship and society, subjecting defendant UNKNOWN CHICAGO POLICE OFFICER to liability pursuant to 740 ILCS 180/1, commonly referred to as the Wrongful Death Act

WHEREFORE plaintiff requests judgement in their favor and against Defendant, UNKNOWN CHICAGO POLICE OFFICER awarding compensatory damages, punitive damages, attorneys' fees and costs, and any other relief this Court deems just and appropriate.

### COUNT V – SURVIVAL ACT—WILLFUL AND WANTON NEGLIGENCE
#### (v. UNKNOWN CHICAGO POLICE OFFICER)

1-24.     Plaintiff re-alleges paragraphs 1-24 of Count IV of this Complaint as if fully set forth herein.

25.     As a further direct and proximate result of defendant UNKNOWN CHICAGO POLICE OFFICER's aforementioned willful and wanton acts or omissions, plaintiff's decedent Chequita Adams suffered serious injuries of a personal and pecuniary nature, including but not limited to great pain and suffering prior to his death, subjecting defendant UNKNOWN CHICAGO POLICE OFFICER to liability pursuant to the Illinois Survival Act, 755 ILCS 5/27–6.

WHEREFORE, plaintiff asks for judgment against Defendant UNKNOWN CHICAGO POLICE OFFICER awarding compensatory damages, punitive damages, attorneys' fees and costs, and any other relief this Court deems just and appropriate.

### COUNT VI
### WILFUL AND WANTON CONDUCT

## WRONGFUL DEATH AGAINST TAYLOR CLARK

Plaintiff complains of Taylor Clark as follows:

1-21.    Plaintiff restates and re-alleges paragraphs 1-21 of the General Allegations as and for paragraphs 1-21 of this Complaint.

22.      All times relevant hereto Clark had a duty to refrain from willful and wanton conduct.

23.      Notwithstanding his aforementioned duty, Clark was guilty of one or more of the following willful and wanton acts or omissions:

(a) Drove his vehicle at a high speed westbound on Roosevelt Road in a Chicago residential neighborhood in conscious disregard of others including plaintiff's decedent;

(b) Caused the initiation a high speed pursuit of his vehicle by refusing to stop when another police officer attempted to curb his vehicle in and through a residential neighborhood, in the face of imminent danger;

(c) Continued eluding the police SUV driven by the defendant UNKNOWN CHICAGO POLICE OFFICER at high speed in and through a residential neighborhood, in the face of imminent danger;

(d) Failed to keep a proper lookout for the safety of plaintiff's decedent and to avoid colliding with the vehicle of plaintiff's decedent;

(e) Failed to sound proper warning for the safety of plaintiff's decedent and others on the roadway;

(f) Failed to reduce the speed of his vehicle and avoid colliding into the vehicle of plaintiff's decedent;

(g) Failed to obey the restrictions and rules of the City before driving his vehicle at high speed in a residential neighborhood in the City of Chicago;

(h) Failed to obey the instructions and rules of the City by continuing to drive his vehicle at high speed in a residential neighborhood in the City of Chicago;

(i) Failed and refused to pull to the side of the road and stop when indicated by law enforcement; and

(i) Was otherwise guilty of willful and wanton acts and omissions in gross disregard for the safety of others including plaintiff's decedent.

24.     As a direct and proximate result of one or more of Clark's willful and wanton acts or omissions, in gross disregard and indifference for the consequences to plaintiff's decedent, plaintiff's decedent suffered damages to her body, minds, and civil rights, and she was caused to endure great pain, suffering and disability and death on June 27, 2017.

25.     As a direct result of the death of plaintiff's decedent Chequita Adams, her next of kin have suffered great losses of a personal and pecuniary nature including grief and sorrow and loss of companionship and society, subjecting defendant TAYLOR CLARK to liability pursuant to 740 ILCS 180/1, commonly referred to as the Wrongful Death Act

WHEREFORE plaintiff prays for judgment in their favor and against Clark, awarding compensatory damages, punitive damages, attorneys' fees and costs, and any other relief this Court deems just and appropriate.

### COUNT VII – SURVIVAL ACT—WILLFUL AND WANTON NEGLIGENCE
### (v. TAYLOR CLARK)

1-24.     Plaintiff re-alleges paragraphs 1-24 of Count VI of this Complaint as if fully set forth herein.

25.     As a further direct and proximate result of defendant TAYLOR CLARK's aforementioned willful and wanton acts or omissions, plaintiff's decedent Chequita Adams suffered serious injuries of a personal and pecuniary nature, including but not limited to great pain and suffering prior to her death, subjecting defendant TAYLOR CLARK to liability pursuant to the Illinois Survival Act, 755 ILCS 5/27–6.

WHEREFORE, plaintiff asks for judgment against Defendant TAYLOR CLARK awarding compensatory damages, punitive damages, attorneys' fees and costs, and any other relief this Court deems just and appropriate.

## COUNT VIII—CIVIL BATTERY AGAINST TAYLOR CLARK

Plaintiff complains of Defendant, TAYLOR CLARK as follows:

1-21.   Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein as paragraphs 1-21 of the General Allegations of this Complaint.

22.     The conduct of Defendant, TAYLOR CLARK resulted in offensive physical contact with the plaintiff's decedent made without her consent, thus constituting battery under Illinois law.

23.     Defendant, TAYLOR CLARK's actions proximately caused plaintiff's decedent to suffer injuries, including without limitation great bodily harm, as well as physical pain, suffering and death.

WHEREFORE plaintiff prays for judgement against Defendant, TAYLOR CLARK awarding compensatory damages, punitive damages, attorneys' fees and costs, and any other relief this Court deems just and appropriate.

## COUNT IX—MONELL CLAIM AGAINST THE CITY OF CHICAGO

Plaintiff complains of the City of Chicago as follows:

1-23.    Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein as paragraphs 1-23 of this Count IX.

24.    At all times relevant, plaintiff's decedent enjoyed and possessed a right under the Fourth Amendment to the Constitution to be free from the use of unreasonable force by police, including but not limited to Defendant, TAYLOR CARTER.

25.    Plaintiff's decedent's injuries and damages herein were proximately caused by policies and practices on the part of the City under the authority of the City.

26.    In June 2017, and for a period of time prior thereto, the City had notice of a widespread practice by their employees under which citizens, such as plaintiff's decedent, were routinely subjected to the use of excessive force.

27.    The City's excessive use of force and willful violation of its pursuit policies is enabled by the code of silence.

28.    The City has also engaged in a widespread practice of their respective employees testifying dishonestly, making false reports, hiding and destroying evidence, failing to require official reports of official police activities, and/or failing to require complete and honest reports of police activities.

29.    These practices are directly encouraged at every level of law enforcement, from the Corporation Counsel's Office, to IPRA, to IAD, to the Cook County State's Attorneys' Office, and infect the City's relationship with its police, including but not limited to the

employment contract with the Fraternal Order of Police.

30.     The failure to require police reports that are complete and honest encourages officers not to report the misconduct of other officers and creates a culture that enables misconduct.

31.     On information and belief, Defendant, UNKNOWN CHICAGO POLICE OFFICER and other City employees have reported that the vehicle which defendant TAYLOR CLARK was driving resembled a vehicle engaged in a carjacking days to weeks earlier as the basis for the attempted curbing of Clark's vehicle. On information and belief, Defendant UNKNOWN CHICAGO POLICE OFFICER also claimed that the reason for the initial attempted stop was that Clark rolled his vehicle through a stop sign. Plaintiff believes these reports to be false. Chicago police officers have a widespread practice of falsely reporting specific lies that work to cast doubt over mistakes in their police work.  Similarly, officers engaged in pursuits tell lies that either they were not pursuing or they terminated the pursuit prior to the fatal accident.

32.     Furthermore, the City fails to adequately investigate and discipline officers who have conducted wrongful reckless pursuits and shootings.  Likewise, the City fails to discipline their employees when they commit perjury and create false reports.

33.     The City has a widespread practice of failing to adequately document claims by officers about vehicle pursuits and/or police involved shootings, to wit:

(a) On information and belief, Officer John Fitzgerald shot Aaron Harrison in 2007 after garnering 25 misconduct complaints between 2001 and 2006. Fitzgerald was awarded the Superintendent's Award of Valor in 2010 for the incident. IPRA ruled the shooting

justified, based largely on Fitzgerald's account that Harrison was attempting to shoot him while running away and a gun recovered on the scene. However, multiple witnesses asserted Harrison was unarmed. In 2013, a jury awarded the family a verdict of $8.5 million at trial and the City settled the civil suit after appeal for $9.3 million.

(b) On information and belief, in 2005, Officer Rick Caballero shot and killed Ben Romaine, who was driving away from Caballero. Despite a court order ordering that Romaine's vehicle be preserved for evidence, the Chicago Police Department destroyed the vehicle. The City also altered dispatch evidence. In his original conversation with the radio dispatcher, Caballero's dialogue was noted in an initial transcript as "He just, he just uh, he just ran so I took a shot at him." Later, after a deposition in which Caballero allegedly claimed his words were "he just rammed us," not "he just ran," an investigator for the Office of Professional Standards changed the record of the dispatch call to "he just, he just uh, he just [unintelligible] so I took a shot at him." Caballero was later awarded the Superintendent Award for Valor for the incident. The City settled the civil suit brought by the family.

(c) On information and belief, in 2009, Officer Darren Wright shot Corey Harris in the back and killed him. The City settled the civil suit for $1.2 million.

(d) On information and belief, Officer Michael St. Clair shot William Hope multiple times in the chest in broad daylight while Hope was in his car. In 2012, a federal jury found against the officers and awarded the family $4.6 million.

(e) On information and belief, in 2015, after officers shot Laquan McDonald sixteen times and killed him, the City settled the case for $5 million without any lawsuit being filed.

17

Nine of the shots hit McDonald in the back. Chicago police officers went in a Burger King Restaurant located fewer than 100 yards from where 17-year old Laquan McDonald was shot and killed and 86 minutes of surveillance footage (encompassing the time McDonald was shot and killed) were deleted, according to the restaurant's manager and McDonald's attorney.

(f) On information and belief, in 2013, after officers pursued a 17 year old driver at high speeds and ran him into pedestrians in a residential neighborhood, officers claimed they had discontinued the chase and arrived at the accident scene in the aftermath. Witnesses at the scene testified that police never discontinued the chase and the city settled that lawsuit for $1.375 million.

34.     On information and belief, former IPRA investigator Lorenzo Davis was terminated from his employment in 2015 because he determined that several police shootings were unjustified and refused to change the conclusions in his reports. Davis' team of investigators for IPRA found as many as six incidents where the officer was not justified in shooting the civilian victim. Davis' supervisor at IPRA directed him to change his findings and determine that each shooting was justified. Davis was told that if he did not change his findings, he was insubordinate and would face discipline.

35.     CPD detectives assigned to investigate police shootings provide FOP representatives access to and information about police involved shootings. That access and information is passed, often under dubious notions of legal privilege, between lawyers and accused CPD officers. In this manner, CPD officers can craft false narratives about police shootings that do not conflict.

36.     In furtherance of this practice, CPD and IPRA permit witness and accused officers to be represented by the same counsel and FOP representatives during official statements, who take breaks from being on the record to set their clients' stories straight.

37.     In the same vein, officers who use deadly force and take the life of a citizen are not required to draft a contemporaneous narrative of what occurred that justified the shooting or otherwise give a recorded and on-the-record statement about what occurred. The City does not require officers who take the lives of citizens to make narrative reports about the occurrence until after the officer, through his representatives (legal counsel and/or the Fraternal Order of Police) have an opportunity to review all reasonably available evidence so that the police can tell stories that do not conflict with themselves or the evidence.

38.     Rather than discipline misconduct and require reporting, the City circles the wagons. This widespread practice is allowed to flourish because the City directly encourages, and is thereby the moving force behind, the very type of misconduct at issue by failing to adequately train, supervise, and control officers, and by failing to adequately investigate, punish and discipline prior instances of similar misconduct, thus directly encouraging future abuses such as those affecting plaintiff's decedent.

39.     In this way, the City violated plaintiff's decedent' rights by maintaining policies and practices that were the moving force for the foregoing constitutional violations.

40.     The above-described widespread practices, so well-settled as to constitute de facto policy in the City, and were able to exist and thrive because governmental policymakers with authority over the same, exhibited deliberate indifference to the problem, thereby effectively ratifying it.

41.     Plaintiff's decedent's injuries were proximately caused by employees of the City, including but not limited to Defendant, UNKNOWN CHICAGO POLICE OFFICER and Defendant TAYLOR CLARK, who acted pursuant to City policy and practices in engaging in the misconduct described in this Count,

WHEREFORE, pursuant to *Monell v. N.Y. Dep't of Soc. Servs.,* 436 U.S. 658 (1978), plaintiff demands judgment against the City awarding compensatory damages, attorneys' fees and costs, and any other relief this Court deems just and appropriate.

## COUNT X—INDEMNIFICATION

Plaintiff complains of the City as follows:

1-41.     Plaintiff incorporates all previous paragraphs as though fully set forth herein, as paragraphs 1-41 of Count IX.

42.     At all relevant times, the City was the employer of Defendant, UNKNOWN CHICAGO POLICE OFFICER and TAYLOR CLARK, respectively.

43.     Defendant, UNKNOWN CHICAGO POLICE OFFICER and TAYLOR CLARK committed the acts alleged above under the color of law and in the scope of their employment as employees of the City.

44.     In Illinois, public entities are directed to pay for any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

45.     As a proximate result of the unlawful acts of Defendant, UNKNOWN CHICAGO POLICE OFFICER and TAYLOR CLARK which occurred within the scope of their

respective employment, plaintiff's decedent was injured.

WHEREFORE, should Defendant, UNKNOWN CHICAGO POLICE OFFICER and/or TAYLOR CLARK be found liable on one or more of the claims set forth above, plaintiff demands that the City be found liable for any compensatory judgment plaintiff obtains against said individual defendant(s), plus attorney's fees and costs awarded and such other and additional relief that this Court deems equitable and just.

### COUNT XI—*RESPONDEAT SUPERIOR*

Plaintiff complains of the City as follows:

1-45.   Plaintiff hereby incorporates all previous paragraphs as though fully set forth herein, as paragraphs 1-45 of Count IX.

46.     In committing the acts alleged in the preceding paragraphs, Defendant, UNKNOWN CHICAGO POLICE OFFICER, and TAYLOR CLARK were agents of the City and were acting at all relevant times within the scope of their employment and under color of law.

47.     The City is liable as principal for all torts committed by their agents.

WHEREFORE, should Defendant, UNKNOWN CHICAGO POLICE OFFICER and/or TAYLOR CLARK be found liable on one or more of the stated claims set forth above, plaintiff demands that, pursuant to *respondeat superior*, the City be found liable for any compensatory judgment Plaintiff obtains against said individual defendant(s), as well as costs awarded.

JURY TRIAL DEMANDED

Respectfully submitted,

MONTGOMERY LAW FIRM, LLC.

By:   /s/ James D. Montgomery, Jr.
     One of Plaintiff's  Attorneys

James D. Montgomery, Jr.
MONTGOMERY LAW FIRM, LLC.
221 N. LaSalle Street, Suite 1414
Chicago, IL 60601
(312) 880-1001
jdm@mfirmlaw.com

Atty. No. 6183323